```
 1            UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF TEXAS
 2                  HOUSTON DIVISION

 3
   UNITED STATES OF AMERICA   .  Criminal Action
 4                            .  No. 10-512
           Plaintiff,         .
 5                            .
                              .
 6 VS.                        .
                              .
 7                            .
                              .
 8 THOR ALEXANDER MORRIS,     .
                              .  May 9, 2011
 9         Defendant.         .  9:40 A.M.
                                 HOUSTON, TEXAS
10
                  TRANSCRIPT OF PROCEEDINGS
11        BEFORE THE HONORABLE VANESSA D. GILMORE
               UNITED STATES DISTRICT JUDGE
12

13 APPEARANCES:

14

15 FOR THE UNITED STATES:   MR. CRAIG FEAZEL
                            United States Attorney's Office
16                          P.O. Box 61129
                            Houston, Texas 77208
17

18

19 FOR DEFENDANT MORRIS:    MR. KELLY W. CASE
                            Case Law, PLLC
20                          2203 Timberloch Place
                            Suite 100
21                          The Woodlands, Texas 77380

22

23

24
   Proceedings recorded by mechanical stenography, transcript
25 produced by computer-aided transcription.
```

Stephanie Kay Carlisle, CSR, RPR   713.250.5157

```
 1  APPEARANCES (Continued):

 2

 3  OFFICIAL COURT REPORTER: MS. STEPHANIE KAY CARLISLE
                             U.S. District Court
 4                           515 Rusk, Suite 8016
                             Houston, Texas 77002
 5                           713.250.5157

 6

 7

 8

 9

10

11                        *  *  *

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

| | |
|---|---|
| 1 | **P R O C E E D I N G S** |
| 2 | (May 9, 2011) |
| 3 | THE COURT:  United States versus Thor Morris. |
| 4 | For the United States? |
| 5 | MR. FEAZEL:  Craig Feazel for the United States. |
| 6 | THE COURT:  Say it again, please. |
| 7 | MR. FEAZEL:  Craig Feazel, Your Honor. |
| 8 | MR. CASE:  Kelly Case for the defendant.  He is |
| 9 | here. |
| 09:40:21AM 10 | THE COURT:  And for Thor Morris? |
| 11 | MR. CASE:  Kelly Case. |
| 12 | THE COURT:  All right.  We are here this morning for |
| 13 | sentencing. |
| 14 | Mr. Feazel, has the United States seen the |
| 09:40:42AM 15 | Presentence Investigation Report, the addendum and the second |
| 16 | addendum to the Presentence Investigation Report? |
| 17 | MR. FEAZEL:  We have, Your Honor.  We have no |
| 18 | objections. |
| 19 | THE COURT:  All right.  Mr. Case, have you and your |
| 09:40:53AM 20 | client had a chance to review the Presentence Investigation |
| 21 | Report, the addendum, and the second addendum to the |
| 22 | Presentence Investigation Report? |
| 23 | MR. CASE:  Yes, Your Honor, we have; and we have |
| 24 | filed objections. |
| 09:41:01AM 25 | THE COURT:  Right.  Then the Presentence |

|  |  |
|---|---|
|  | 1 Investigation Report and the addendums will be placed into the |
|  | 2 record under seal.  In the event that there is any appeal of |
|  | 3 this case, the only portion that will not be disclosed will be |
|  | 4 that portion that contains a sentencing recommendation from |
| 09:41:14AM | 5 the probation department to the Court. |
|  | 6         There are no objections by the United States. |
|  | 7         The defendant has filed some objections. |
|  | 8 First, the defendant objects to the loss amount reflected in |
|  | 9 Paragraph 27 of the report, indicating that the con -- the |
| 09:41:35AM | 10 monitored conversations, those with the undercover agents, |
|  | 11 involve some puffing. |
|  | 12         The only difference, I guess I would see, |
|  | 13 between the earlier conversations between just Morris and |
|  | 14 Martin and the later conversations that ended up being with |
| 09:41:57AM | 15 the undercover officer, Leo, is somehow or another the number |
|  | 16 of ATM machines got increased based on some statement that Leo |
|  | 17 made to 35 machines as opposed to the original 32 that Morris |
|  | 18 and Martin had mapped out before they got the undercover |
|  | 19 officers involved.  And that was the only big distinction that |
| 09:42:22AM | 20 I saw between the earlier conversations and the later |
|  | 21 conversations. |
|  | 22         So, to the extent that the defendant objects to |
|  | 23 those later monitored conversations involving some additional |
|  | 24 puffing -- and the number did seem to change with those |
| 09:42:37AM | 25 conversations -- I think that that probably is a valid |

1  objection.  But with respect to the overall loss amount, it
2  doesn't change the loss amount by that much.
3              Mr. Case, I mean, 32 machines that he and
4  Martin had talked about versus the number the that the FBI
09:42:59AM 5  agent threw out, it amounts to a difference of 256,000 versus
6  280,000, which still puts us in the 12-level loss amount of
7  more than 200 but less than 400.
8              Did you have something else more -- besides
9  that issue in terms of dealing with the undercover officers
09:43:20AM 10  that you thought was relevant to the loss amount issue?
11         MR. CASE:  The -- yes, Your Honor.
12         THE COURT:  Yes, sir.
13         MR. CASE:  To make it simple, I didn't see a basis
14  in fact for the numbers that were produced; in other words,
09:43:33AM 15  the --
16         THE COURT:  $400 gift card thing and --
17         MR. CASE:  No, ma'am.  The number of ATM machines
18  that were available.  It was -- this conversation -- that part
19  of the conversation initiated from initially Martin and then,
09:43:47AM 20  once Mr. Morris arrived in Houston, from Leo the case agent.
21         THE COURT:  It increased a little bit more.
22         MR. CASE:  It did increase, but what my concern is
23  basically about is there's nothing to show that there were
24  actually this many machines in Houston.  I'm having trouble
09:44:05AM 25  with a 12-level increase based on something that is so

1 speculative that it's -- it is not anywhere in the record
2 other than statements made by, first of all, which should have
3 been a co-conspirator and, second of all, by a law enforcement
4 undercover.  The problem I have is we don't know that that's a
09:44:23AM 5 real intended loss.  And I understand --
6             THE COURT:  It was his intent, though, at the time
7 he came.
8             MR. CASE:  I understand.  I'm fully aware of that.
9             THE COURT:  You're saying you are not sure that it
09:44:32AM 10 was possible but it was -- it was his hope that it was
11 probable, and that's where the intent comes from.
12             MR. CASE:  Yes, Your Honor.
13             THE COURT:  Well, the objection is sustained in
14 part.  The Court finds that the intended loss amount should
09:44:46AM 15 have reflected $256,000 in Paragraph 27 based on the number of
16 machines that the defendant was discussing with Martin before
17 the undercover agents got involved as opposed to the 35 that
18 he discussed with Leo, the fake co-conspirator, the undercover
19 agent.  But that does not change the offense characteristic.
09:45:15AM 20 It still remains at a Level 12.  And the Court finds that that
21 was this defendant's intended loss at the time that he began
22 the second series of conversations with the undercover agent.
23             The defendant next objects to the two-point
24 increase based on the use of a computer system because the ATM
09:45:40AM 25 machine was a free-standing machine.  I don't think that's

```
                 1  really a valid objection, Mr. Case.  It doesn't have to -- I
                 2  mean, obviously the ATM machine still had to be connected to
                 3  the bank's infrastructure in order for it to be able to
                 4  function.  But I think this particular comment covers this
    09:46:05AM   5  particular type of computerized device, the ATM machine, as
                 6  well.  So --
                 7            MR. CASE:  My objection was basically that he would
                 8  have no way to maintain or op -- excuse me -- maintain or
                 9  operate the critical infrastructure of the bank through the
    09:46:23AM  10  ATM machine.  I understand the Court's logic.
                11            THE COURT:  Okay.  All right.  The objection is
                12  overruled.
                13            Were there any other factual inaccuracies in
                14  the report that could have an impact on sentencing?
    09:46:36AM  15            Mr. Case, did you see anything?
                16            MR. CASE:  No, Your Honor.
                17            THE COURT:  Mr. Feazel, did you see anything?
                18            MR. FEAZEL:  No, Your Honor.
                19            THE COURT:  All right.  Other than the small change
    09:46:39AM  20  that the Court made to Paragraph 27, the Court adopts the
                21  Presentence Investigation Report and the addendums; finds that
                22  the statutory range of punishment is not more than five years;
                23  supervised release not more than three years, fine not more
                24  than 250,000, special assessment $100.
    09:46:57AM  25            Under the sentencing guidelines, based on a
```

```
                1  total offense level of 21, any criminal history category of I
                2  provides for a guideline range of 37 to 46 months, supervised
                3  release term of two to three years, a fine range of 7500 to
                4  75,000, a special assessment of $100.
09:47:16AM      5            Mr. Case, would you like to say anything on
                6  behalf of your client, please?
                7            MR. CASE:  My client has family members present.
                8            If you would stand up.
                9            THE COURT:  Is that his mom?
09:47:26AM     10            MR. CASE:  His mother and father.
               11            THE COURT:  Oh, okay.
               12            MR. CASE:  They are divorced, but they are both here
               13  to support.
               14            THE COURT:  Oh, okay.
09:47:31AM     15            MR. CASE:  I also have letters.
               16            THE COURT:  Did I get those already?
               17            MR. CASE:  I believe that you didn't include them in
               18  the PSI, but I did see them in the --
               19            THE COURT:  I did not see them.  May I see them?
09:47:42AM     20  Were they --
               21            MR. CASE:  I e-mailed them to the case agent after
               22  the --
               23            THE COURT:  Oh, to the case agent.
               24            MR. CASE:  No.  I'm sorry.  To the probation officer
09:47:54AM     25  before.
```

```
                1              THE COURT:  Oh, okay.
                2                   Okay.  Anything else you would like to say on
                3    behalf of the defendant?
                4              MR. CASE:  As noted in the Government's no
09:48:12AM      5    objection, Your Honor, they are recommending departure --
                6    excuse me -- a two-level decrease for -- excuse me -- for
                7    acceptance of responsibility.
                8              THE COURT:  Right.  That --
                9              MR. CASE:  I think you included that, but --
09:48:27AM     10              THE COURT:  Say it again, please.  I'm sorry.  Oh.
               11              MR. FEAZEL:  Judge, I believe that's already taken
               12    into account.
               13              THE COURT:  Yes, it was taken care of.  It is not
               14    reflected in the PSR, but in the addendum it was reflected.
09:48:37AM     15    And so, that's how we got from a 24 to a 21.  Right.  It was
               16    in the addendum.  I think it didn't get included because
               17    originally we didn't have the statement of acceptance.  And
               18    then the statement for acceptance was included in the original
               19    addendum, and that changed the offense level down to a 21 from
09:48:56AM     20    a 24.
               21              MR. CASE:  That's correct.
               22              THE COURT:  Right.  Okay.
               23                   Anything else?
               24              MR. CASE:  No, Your Honor.  That's all.
09:49:05AM     25              THE COURT:  All right.  Mr. Morris, what would you
```

1  like to say on your own behalf?
2          THE DEFENDANT: I'm sorry, Your Honor. I messed up.
3  I had a lot going for me, and I made one bad decision. I let
4  down my family, my friends, and everybody I knew. I'm sorry.
5          THE COURT: Take your time. It is important that
6  you speak up for yourself.
7          MR. CASE: Yes.
8          THE DEFENDANT: I'm ashamed of what I did. If I had
9  to do it all over again, there's no way.
10         THE COURT: What about all this other conversation
11 about -- and your lawyer may grab you by the arm and tell you
12 not to talk to me, but I'm going to give it a stab anyway.
13             Well, maybe I ought to leave it alone.
14 Mr. Case is giving me the evil eye -- not really. But was all
15 this other conversation with Martin, was that all puffing,
16 too, or what?
17         THE DEFENDANT: Yes, Your Honor.
18         THE COURT: Did you do any of that stuff?
19         THE DEFENDANT: No, Your Honor. This is the first
20 time I've been in trouble with the law.
21         THE COURT: It may seem like financial fraud isn't
22 hurting anybody, but it does hurt people.
23         THE DEFENDANT: I understand that.
24         THE COURT: Just because it's some big corporate
25 entity or banking institution doesn't mean that it is not a

```
                    1  real loss.  It is a loss when a bank has its money taken from
                    2  them because it ends up being passed on to all of us
                    3  customers, everybody, you know, just people generally to have
                    4  to deal with the theft and crime that is committed against
      09:51:25AM    5  banks.  It is reflected in higher rates and for services and
                    6  more service charges and all kinds of other things.  And it
                    7  does translate into a real loss when they have to sort of
                    8  absorb loss as a result of thefts.
                    9             So, it is not a victimless crime.  It may seem
      09:51:44AM   10  like it just because you are just taking money from some big
                   11  corporation or from some banking institution, but it really
                   12  does make a difference when people steal from them.  It is no
                   13  different than holding somebody up with a gun.  It's the same
                   14  thing, but you are just doing it with a computer just because
      09:52:01AM   15  you managed to find the book with the codes that they stupidly
                   16  put online so that people could go in and figure out how to
                   17  steal their money.  It still makes a difference.
                   18             Do you understand?
                   19        THE DEFENDANT:  Yes, Your Honor.
      09:52:13AM   20        THE COURT:  And holding all these people's credit
                   21  card numbers on your computer, 50,000 credit card numbers, I
                   22  mean, come on now.
                   23        THE DEFENDANT:  Your Honor --
                   24        THE COURT:  Pardon me?  I didn't hear you.
      09:52:32AM   25        THE DEFENDANT:  I'm sorry.  Your Honor, that file
```

```
                 1  was in a bunch of files that I downloaded over two years ago
                 2  now.  I didn't collect those card numbers.  I didn't do
                 3  anything with that, Your Honor.
                 4          THE COURT:  Okay.
09:52:46AM       5          THE DEFENDANT:  I thought I had deleted that over
                 6  two years ago.
                 7          THE COURT:  You are saying you didn't even know that
                 8  they were still on your computer?
                 9          THE DEFENDANT:  No, Your Honor.
09:52:55AM      10          THE COURT:  All those credit card numbers of other
                11  people?
                12          THE DEFENDANT:  I --
                13          THE COURT:  Pardon me?
                14          THE DEFENDANT:  It was in a file, and I had gotten
09:53:05AM      15  rid of my files for them --
                16          THE COURT:  So, people, like, share people's credit
                17  card numbers and stuff?
                18          THE DEFENDANT:  It was just in a bunch of files that
                19  I had downloaded in a folder.  I thought I had deleted it.
09:53:30AM      20          THE COURT:  Okay.  Anything else from the United
                21  States?
                22          MR. FEAZEL:  Nothing, Your Honor.  We just feel that
                23  somewhere within the guidelines is appropriate.
                24          THE COURT:  All right.  The Court will state the
09:54:32AM      25  sentence at this time.  The lawyers will have a final
```

```
              1  opportunity to make any objections before the sentence is
              2  imposed.
              3            It is the judgment of this Court that the
              4  defendant, Thor Alexander Morris, is hereby committed to the
09:55:14AM    5  custody of the Bureau of Prisons to be imprisoned for
              6  37 months.
              7            The defendant is before this Court for
              8  sentencing having pled guilty to fraud and related activity in
              9  connection with a computer.  The FBI opened an investigation
09:55:26AM   10  following a complainant report that the defendant planned to
             11  gain unauthorized access to several ATM machines.  The Court
             12  has held the defendant responsible for an intent to
             13  authorize -- to access 32 ATM machines in attempting to obtain
             14  $8,000 from each of those machines.
09:56:00AM   15            Based on those findings, the Court has found
             16  that the defendant's intended criminal conduct could have
             17  yielded $256,000 in cash withdrawn by defrauding the ATM
             18  machines in Houston, Texas.
             19            The defendant has no prior criminal history.
09:56:20AM   20  The defendant has been assessed additional offense points for
             21  the use of the -- a computerized access device.  The Court
             22  denied the defendant's objection to the loss amount but takes
             23  that objection into consideration in determining where within
             24  the applicable guideline the defendant should be sentenced and
09:56:53AM   25  for that reason has chosen to sentence the defendant at the
```

```
            1  low end of the applicable guideline.  The Court believes that
            2  that sentence is sufficient to satisfy the sentencing
            3  objectives and the factors enumerated in 18 USC Section
            4  3553(a).
09:57:14AM  5              Upon release from imprisonment, the defendant
            6  shall be placed on supervised release for a term of
            7  three years.  A three-year term of supervised release will
            8  allow the probation department the maximum amount of time to
            9  assist the defendant as he reintegrates back into society and
09:57:32AM 10  to oversee his compliance with his conditions of supervised
           11  release.
           12              Within 72 hours of release from the custody of
           13  the Bureau of Prisons, the defendant shall report in person to
           14  the probation office in the district to which the defendant is
09:57:47AM 15  released.
           16              While on supervised release, the defendant
           17  shall not commit another federal, state, or local crime; shall
           18  comply with the standard conditions that have been adopted by
           19  this Court and any mandatory conditions required by law,
09:57:59AM 20  including the following additional conditions:
           21              The defendant shall not possess a firearm,
           22  ammunition, dangerous device, or any other dangerous weapon.
           23  The defendant is required to provide the -- to cooperate in
           24  the collection of a DNA sample if such is authorized.
09:58:25AM 25              It is further ordered that the defendant shall
```

```
          1  pay to the United States a special assessment of $100 due and
          2  payable immediately.  The Court finds that the defendant does
          3  not have the ability to pay a fine within the guideline range,
          4  and the Court waives the imposition of a fine in this case.
09:58:43AM 5              Mr. Feazel, do you know of any reason why the
          6  sentence should not be imposed as stated?
          7       MR. FEAZEL:  No, Your Honor.
          8       THE COURT:  Mr. Case, do you know of any reason why
          9  the sentence should not be imposed as stated?
09:58:54AM 10      MR. CASE:  No, Your Honor.
         11       THE COURT:  Then the sentence is imposed as stated.
         12              Mr. Morris, you can appeal your conviction if
         13  you believe that your guilty plea was somehow unlawful or
         14  involuntary or if you think that there was some other
09:59:07AM 15  fundamental defect in the proceedings that was not waived by
         16  you.  With few exceptions, any notice of appeal must be filed
         17  within 15 days of the date the judgment is entered in this
         18  case.  If you are without funds to hire an attorney to
         19  represent you, you can apply to the Court for in forma
09:59:21AM 20  pauperis status; and counsel will be appointed for you.
         21              Do you understand me, sir?
         22       THE DEFENDANT:  Yes, Your Honor.
         23       THE COURT:  All right.  Anything else from the
         24  United States?
09:59:27AM 25      MR. FEAZEL:  Nothing, Your Honor.
```

```
                1            THE COURT:  Anything else from the Defense?
                2            MR. CASE:  No, Your Honor.
                3            THE COURT:  The defendant is on bond, $50,000
                4   unsecured bond.
09:59:34AM      5            Does the United States have any objection to
                6   him remaining on bond pending designation?
                7            MR. FEAZEL:  No, Your Honor.
                8            THE COURT:  Mr. Morris, have you had any new law
                9   violations since you have been on bond?
09:59:44AM     10            THE DEFENDANT:  No, Your Honor.
               11            THE COURT:  Have you missed any appointments with
               12   your pretrial services officer?
               13            THE DEFENDANT:  No, Your Honor.
               14            THE COURT:  Are you still working?
09:59:51AM     15            THE DEFENDANT:  Yes, Your Honor.
               16            THE COURT:  Okay. All right.  Then I will let you
               17   stay on bond until they designate you; that is, until they
               18   tell you where it is that you're supposed to surrender
               19   yourself to.  Same conditions of release.  Don't make anybody
10:00:01AM     20   come looking for you.
               21            Do you understand me, sir?
               22            THE DEFENDANT:  Yes, Your Honor.
               23            THE COURT:  All right.  Esthela, please file these
               24   for me, please.  These are mine, right, to keep, right?
10:00:10AM     25            MR. CASE:  Yes, Your Honor.
```

```
                1          THE COURT:  Okay.  All right.  Anything else from

                2   the Defense?

                3          MR. CASE:  No, Your Honor.

                4          THE COURT:  All right.  Thank you.  Then you're

10:00:13AM      5   excused.

                6      (Concluded)

                7                           * * *

                8   I certify that the foregoing is a correct transcript from the
                    record of proceedings in the above-entitled cause, to the best
                9   of my ability.

               10


               11   //s_____        08/29/2011
                    Stephanie Kay Carlisle       CSR, RPR      Date
               12   Official Court Reporter
```