IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **Thor Alexander Morris,** | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 4:12-3086 |
| | § | |
| **United States of America** | § | |
| | § | |
| | § | |
| Respondent. | § | |

## ORDER

Pending before the Court is Petitioner Thor Alexander Morris' Motion for a Certificate of Appealability of this Court's Judgment Denying His Motion to Vacate (**Instrument No. 8).**

### I.

### A.[1]

Brian Rhett Martin met Thor Alexander Morris online near the end of February 2010. Martin found Morris was selling blank American Express Black Promotion Cards on his website www.centurionreplica.com. Initially, their conversations revolved around the black cards but the two men quickly became online acquaintances holding conversations multiple times per day.

Eventually, Morris approached Martin to hack into ATM machines. Martin told Morris he was not interested in conducting any illegal activities as he had just gotten out of prison and did not ever want to go back. The fact that Martin was a convicted felon excited Morris and resulted in Morris confiding in Martin.

Through several additional communications, Morris approached Martin to identify and provide locations of Tranax Mini-Bank 1500, 1700, and 2000 ATM machines. Specifically, Morris requested

---

[1] Unless stated otherwise, the facts contained in this section are derived from the Presentence Investigation Report. *See* (Instrument No. 33).

that Martin place a GPS tracking device on an ATM maintenance man's vehicle so that Martin could identify many locations of the specific type of ATM's. Morris then planned on flying to Houston, Texas, to meet Martin and travel to each ATM machine. Morris informed Martin that he had a way to insert a specific password to gain unauthorized access to the ATM machines. Morris planned to change the denominations electronically within the ATM software to make the ATM think that it contained cartridges of one-dollar bills instead of the actual twenty-dollar bills. Morris would then purchase a Wal-Mart "Green Dot" Pre-Paid Card worth $400 with a false identification. While at each ATM, Morris would insert the Wal-Mart "Green Dot" Card, ask the ATM to withdraw $400 in one dollar denominations but actually receive $8,000 (400 X $20). Morris was planning on withdrawing $8,000 to $10,000 per ATM, utilizing one to two Wal-Mart "Green Dot" Cards. Morris promised he would provide 50% of his profits to Martin for his assistance in locating the ATM machines and accompanying him throughout his criminal activities in Houston, Texas.

Martin and Morris discussed a time frame when Morris would come into town. Morris would travel to Houston, Texas, the first or second week of April 2010. Martin informed Morris that he had mapped out approximately 32 ATM machines for Morris' trip.

In March 2010, Martin reported the matter to the FBI. Martin met with special agents (SAs) and provided the FBI with consent to search his e-mail accounts and to assume the e-mail and online identity of one of his accounts. Martin cooperated and gathered information about Morris to further the FBI's investigation. Martin informed Morris that he had a "buddy" named "Leo," an undercover SA, that Morris could introduce to the scheme. Morris offered to wire $200 via Western Union to Leo to keep him quiet about their planned ATM operation. Morris also offered to send a $200 PrePaid card to Leo.

On April 22, 2010, Leo picked up Morris from the Houston airport. Morris advised Leo he did not bring any pre-paid debit cards that could be used to withdraw the money at the targeted ATM machines; however, Morris brought cash and needed to go to a Wal-Mart to put money on a card before traveling to the first ATM. In the Wal-Mart parking lot, Morris changed his clothes, then entered the

2

Wal-Mart where he purchased the Wal-Mart "Green Dot" Card for $3 and charged the card with $410 for use. Morris explained the purpose of the $410 amount was to have $400 to "withdraw" and money left over for the ATM fees.

Following the purchase of the Wal-Mart "Green Dot" Card, Morris explained that he needed to register and activate the card online. In order to do this, Morris and Leo left the Wal-Mart and drove around to connect to an unsecured wireless connection. After obtaining an unsecured wireless connection outside an apartment complex, Morris accessed www.walmartmoneycard.com, a website where customers register their name, address, phone number and establish a personal identification number (PIN) for debit withdrawals. Morris entered the name Barak Obama and a fictitious address and phone number. Morris registered the PIN as "1234." Leo then drove to an ATM machine located in the store, Mercado 6.

After arriving at Mercado 6, Morris walked into Mercado 6 with Leo. Morris approached the ATMmachine, he entered "ENTER," "CLEAR," "CANCEL," "1," "2," and "3," which resulted in access to the "Enter Password" screen. Morris made three attempts to enter the default password of "55555" to gain unauthorized administrator access and complete access to all ATM functions. The FBI then interrupted Morris before he gained unauthorized access or withdrew any funds. Morris was arrested without incident.

Later that day, Morris was interviewed at the Houston FBI Office. During the interview, Morris admitted he purchased the plane ticket to Houston, Texas, purchased the Wal-Mart "Green Dot" Card, and made action towards gaining unauthorized access to 35 ATM machines. Morris planned to split half of his earnings from the compromised ATM machines with Leo. Morris believed that, realistically, he would be leaving Houston, Texas, with $40,000, as some ATM machines may have been patched (a piece of object code that has been inserted into an executable program to fix a bug). Morris then asked for an attorney.

**B.**

On July 21, 2010, a one-count criminal Indictment was filed in the United States District Court for the Southern District of Texas, Houston Division, naming Thor Alexander Morris, as the defendant. Count one charged Morris with fraud and related activity in connection with computers. The offense occurred on or about April 22, 2010.

On January 18, 2011, Morris, appeared with counsel, before the Court, and entered a plea of guilty as to Count one of the Indictment, without a plea agreement. The Court accepted the defendant's guilty plea and ordered a Presentence Report.

On May 13, 2011, the Court sentenced Morris to thirty-seven month term of imprisonment for count one. (H-CR-10-512, Instrument No. 39, at 2).

**C.**

On April 26, 2012, Petitioner filed a Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S. C. § 2255 (Motion to Vacate). In the Motion to Vacate, Petitioner asks this Court to vacate his sentence on the grounds that his counsel was constitutionally ineffective. (H-CR-10-512, Instrument No. 67, at 1-2). Specifically, he contends that: (1) counsel was ineffective for failing to object to the government's breach of a plea agreement at Petitioner's sentencing hearing; (2) trial counsel was ineffective for failing to object to the failure to apply a three point level reduction under §2X1.1(b)(1) of the Sentencing Guidelines; and (3) counsel was ineffective for failing to object to the district court's application of USSG §3B1.1(c) enhancement. (H-CR-10-512, Instrument No. 67, at 2). On June 1, 2012, Petitioner filed a Motion for Leave to Amend and Amendment (the "First Motion to Amend"), wherein he clarifies that his Motion to Vacate is merely asking that his sentence be recalculated at an Offense Level 16, Criminal History Category I and he further explains that he should "be given credit towards his probation for his ongoing incarceration." (H-CR-10-512, Instrument No. 72, at 1).

On January 17, 2013, this Court summarily dismissed Petitioner's Motion to Vacate, pursuant to Rule 4(b) of the Rules Governing Section 2255 proceedings (the "Order of Dismissal"). (Instrument No.

5). In the Order of Dismissal, the Court did not address the relief and clarifications advanced in the First Motion to Amend.

On February 1, 2013, Petitioner filed a Motion to Alter or Amend the district's court order summarily dismissing the Motion to Vacate (the "Motion to Alter"). (Instrument No. 7). In the Motion to Alter, Petitioner contends that the Order of Dismissal was improper because it did not include findings of facts or conclusions of law; it did not deny or issue a certificate of appealabilty; and it did not consider Petitioner's First Motion to Amend. (Instrument No. 7, at 2-4). In the Motion to Alter, Petitioner asks this Court to: (1) amend the Order of Dismissal to explicitly state the findings of facts and conclusions of law upon which the Court relief in deciding that the Petitioner was not entitled to habeas relief; (2) amend the Order of Dismissal to allow for a ruling on the issuance of a certificate of appealability; and (3) the Order of Dismissal should be amended to allow for a ruling on the merits of Petitioner's First Motion to Amend. (Instrument No. 7, at 2-4).

On February 25, 2013, Petitioner filed the instant motion, the Application for a Certificate of Appealability in the civil case, wherein he asks this Court to issue a certificate of appealability. (Instrument No. 8). On March 1, 2013, Petitioner filed a similar motion that is the exact duplicate of the instant motion, in the criminal case (the "Motion for Certificate of Appelability in the Criminal Case"). (H-CR-10-512, Instrument No. 85). On March 8, 2013, the Court denied the Motion for Certificate of Appelability in the Criminal Case and the Motion to Alter (H-CR-10-512, Instrument No. 86, at 1).

On April 8, 2013, the Court vacated its order denying the Motion to Alter and ordered the Motion to Alter be granted. (H-CR-10-512, Instrument No. 95).

## II.

The Petitioner, here, has filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. (Instrument No. 1). Section 2255 provides in part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the

5

Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence. 28 U.S.C. § 2255.

Ordinarily, "after a conviction and exhaustion or waiver of any right to appeal, [the] court is entitled to presume that the defendant stands fairly and finally convicted." *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001) (citing *United States v. Frady*, 456 U.S. 152, 164 (1982)). Relief under section, however, asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process. *Kafo v. United States*, 467 F.3d 1063, 1068 (7th Cir. 2006). As a result, "relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Segler*, 37 F.3d 1131, 1133 (5th Cir. 1994) (*quoting United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam)); *see also United States v. Pierce*, 959 F.2d 1297, 1301 (5th Cir. 1992). The remedy provided through collateral challenge process of §2255 is no substitute for an appeal. *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991).

When raising issues of jurisdictional or constitutional magnitude for the first time on collateral review, a defendant ordinarily must show both cause for his procedural default and actual prejudice resulting from the error. *United States v. Cervantes*, 132 F.3d 1106, 1009 (5th Cir. 1998). "A defendant must meet this cause and actual prejudice test even when he alleges a fundamental constitutional error." *Shaid*, 937 F.2d at 232; *United States v. Patten*, 40 F.3d 774, 776 (5th Cir. 1995). "This cause and actual prejudice standard presents a significantly higher hurdle than the plain error standard [applied] on direct appeal." *Pierce*, 959 F.2d at 1301 (5th Cir. 1992) (citing *Frady*, 456 U.S. at 166).

Cause "requires a showing of some external impediment preventing counsel from constructing or raising the claim. For cause to exist, the external impediment, whether it be government interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from

6

raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497 (1991). "If a petitioner fails to demonstrate cause, the court need not consider whether there is actual prejudice." *Rodriguez v. Johnson*, 104 F.3d 694, 697 (5th Cir. 1997). If the petitioner can establish cause for the default, he must then show actual prejudice resulting from the errors of which he complains. *Shaid*, 937 F.2d at 232. Establishing prejudice requires a petitioner to demonstrate that the claimed constitutional violation "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170; *accord Moore v. Quarterman*, 534 F.3d 454, 463 (5th Cir. 2008).

If the petitioner cannot show both cause and prejudice, the failure to raise the claim in an earlier proceeding may nonetheless be excused if the petitioner can show that a fundamental miscarriage of justice would result from a failure to entertain the claim. *Shaid*, 937 F.2d at 232; *accord Moore*, 534 F.3d at 464. That said, only rarely will a case qualify "for the application of this exception," the Supreme Court has "emphasized repeatedly that this exception is limited to extraordinary cases involving manifest miscarriages of justice that would result in the continued incarceration of one actually innocent of the offense." *Shaid*, 937 F.2d at 232; *accord Moore*, 534 F.3d at 464. The term "'actual innocence' means factual, as opposed to legal innocence, 'legal' innocence, of course, would arise whenever a constitutional violation by itself requires reversal, whereas 'actual' innocence…means that the person did not commit the crime." *Rodriguez*, 104 F.3d at 297. In order to show actual innocence, the Petitioner "must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *United States v. Sorrells*, 145 F.3d 744, 750 (5th Cir. 1998). This is a heavy burden given that "actual innocence, as with showing actual prejudice, requires something more than pointing to a mere possibility of prejudice [;] a speculative claim will not satisfy the actual prejudice prong of the cause and prejudice test, *much less demonstrate actual innocence*." *Moore*, 534 F.3d at 465 n.17 (emphasis in original) (internal citations and punctuations omitted).

Rule 8 of the Rules Governing Section 2255 Proceedings provides that "[i]f the motion is not dismissed, the judge must review the answer, any transcript and records of prior proceedings, and any materials submitted . . . to determine whether an evidentiary hearing is warranted." R. Governing § 2255 Proc. U.S. Dist. Cts. 8; *United States v. Cavitt*, 550 F.3d 430, 441-42 (5th Cir. 2008). An evidentiary hearing is not warranted when the motion, files, and records of the case conclusively show that the defendant is not entitled to relief. *See United States v. Samuels,* 59 F.3d 526, 530 (5th Cir. 1995); *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992) (per curiam); *United States v. Smith*, 915 F.2d 959, 964 (5th Cir. 1990) ("If the record is clearly adequate to dispose fairly of the allegations, the court need inquire no further"). Nor is an evidentiary hearing necessary when the Petitioner's "showing is inconsistent with the bulk of h[is] conduct or otherwise fails to meet h[is] burden of proof in the light of other evidence in the record." *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998); *see also Smith*, 915 F.2d at 964. The record in this case, as discussed *infra*, establishes beyond peradventure that the Petitioner is not entitled to the relief she seeks. As such, the record is adequate to dispose of the Petitioner's claims fully and fairly. Accordingly, an evidentiary hearing is not necessary.

### III.

In the Motion to Vacate, Petitioner asks this Court to vacate his sentence on the grounds that his counsel was constitutionally ineffective. (H-CR-10-512, Instrument No. 67, at 1-2). Specifically, he contends that: (1) counsel was ineffective for failing to object to the government's breach of a plea agreement at Petitioner's sentencing hearing; (2) trial counsel was ineffective for failing to object to the failure to apply a three point level reduction under §2X1.1(b)(1) of the Sentencing Guidelines; and (3) counsel was ineffective for failing to object to the district court's application of USSG §3B1.1(c) enhancement. (H-CR-10-512, Instrument No. 67, at 2).

On January 17, 2013, this Court summarily dismissed Petitioner's Motion to Vacate, pursuant to Rule 4(b) of the Rules Governing Section 2255 proceedings (the "Order of Dismissal"). Although the Order of Dismissal did not include a discussion of the Court's reasoning, the Court was convinced that

the motion was meritless. The discussion below explains the basis for the Court's determination that the Motion lacked merit.

In the Motion to Vacate, Petitioner contends that counsel was constitutionally ineffective. The Sixth Amendment guarantees criminal defendants the right to have the assistance of counsel at trial. *See Yarborough v. Gentry*, 540 U.S. 1, 5, (2003). This guarantee includes "the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). Claims for ineffective assistance of counsel are analyzed under the well-established standard set in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail under the *Strickland* standard, a defendant must demonstrate both constitutionally deficient performance by counsel and actual prejudice as a result of the alleged deficiency. *Strickland*, 466 U.S. at 697; *accord United States v. Cavitt*, 550 F.3d 430, 440 (5th Cir. 2008) "Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that rendered the result unreliable." *Strickland*, 466 U.S. at 687; *Riley v. Cockrell*, 339 F.3d 308, 315 (5th Cir. 2003). A court deciding an ineffective assistance of counsel claim is not required to address these prongs in any particular order. *Strickland,* 466 U.S. at 697. If it is possible to dispose of an ineffective assistance of counsel claim without addressing both prongs, "that course should be followed." *Strickland,* 466 U.S. at 697; *see United States v. Stewart*, 207 F.3d 750, 751 (5th Cir. 2000).

Deficient performance is established by "show[ing] that counsel's representation fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688; *Cavitt*, 550 F.3d at 440. That determination is based upon the law as it existed at the time of trial. *Lockhart v. Fretwell*, 506 U.S. 364, 371-72 (1993). When determining whether counsel was deficient, the Court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct." *Hernandez v. Johnson*, 213 F.3d 243, 249 (5th Cir. 2000). Given that, the Court indulges "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance…[in order to prevail] the defendant must overcome the presumption that, under the

circumstances, the challenged action might be considered sound trial strategy." *Strickland,* 466 U.S. at 689; *Cavitt*, 550 F.3d at 440. If a tactical decision is "conscious and informed . . . [it generally] cannot be the basis for constitutionally ineffective assistance of counsel." *Crane v. Johnson*, 178 F.3d 309, 314 (5th Cir. 1999).

To prove prejudice, the Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694; *Cavitt*, 550 F.3d at 440. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. This is a heavy burden which requires a "substantial," and not just a "conceivable," likelihood of a different result. *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011); *see also Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011).

First, Petitioner argues that counsel was ineffective for failing to object to the government's breach of a plea agreement at Petitioner's sentencing hearing. Petitioner claims that he pled guilty as a direct result of the Government promising not to argue against a sentence of probation. (Instrument No. 1, at 2). The Court finds that the Petitioner cannot show that he was prejudiced by counsel's failure to object to the government's breach of the plea agreement, because there was no plea agreement. At the rearraignment, the Government indicated that there was no plea agreement in this case. (H-CR-10-512, Instrument No. 54, at 14-15). After the Government represented that there was no plea agreement, the Court then asked the Petitioner whether anybody made any promise or representation to him of any kind to induce him to enter into a plea of guilty. The Petitioner indicated that no one made him any promises to enter into plea and no one forced him to plead guilty. ((H-CR-10-512, Instrument No. 54, at 15). Plea colloquies are considered solemn declarations in open court carrying a strong presumption of verity. *United Sates v. Palmer*, 456 F.3d 484, 491 (5th Cir. 2006). The judiciary's "willingness to accept plea agreements and colloquies as the factual bases for convictions demands a corollary respect for the integrity of their contents." *Palmer*, 456 F.3d at 491. In keeping with this dictate, Morris' sworn statements are entitled to a strong presumption of truthfulness. *United States v. Cothran*, 302 F.3d 279,

10

283-84 (5th Cir. 2002). (courts give "great weight to the defendant's statements at the plea colloquy."). Morris' sworn statements at the rearraignment show that there was no plea agreement. Because there was no plea agreement, the Government could not have breached the plea agreement. Accordingly, Petitioner cannot show that there is a reasonable probability that but for counsel's failure to object to the Government's breach of the plea, the Court would have found that the government breached the plea agreement. *See Strickland,* 466 U.S. at 694; *Cavitt*, 550 F.3d at 440.

Even if Petitioner believed that there was an oral agreement that the Government breached, Petitioner's claim would still fail. In this circuit, a prisoner may receive federal habeas relief on the basis of alleged promises that are inconsistent with representations made in open court when his guilty plea was accepted, where he can prove: (1) exactly what the terms of the alleged promise were; (2) exactly when, where, and by whom such a promise was made; and (3) the precise identity of an eyewitness to the promise. *Harmason v. Smith*, 888 F. 2d 1527, 1529 (5th Cir. 1988); *accord Rupert v. Johnson*, 79 F. Supp. 2d 680, 704 (W.D. Tex. 1999). If the Petitioner produces independent indicia of the likely merit of his allegations, typically in the form of one or more affidavits from reliable third parties, he is entitled to an evidentiary hearing on the issue. *United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir. 1998). If, however, the defendant's showing is inconsistent with the bulk of his conduct or otherwise fails to meet her burden of proof in the light of other evidence in the record, an evidentiary hearing is unnecessary. *Cervantes,* 132 F.3d at 1110. In this case, Morris has failed to offer any reliable independent indicia in support his allegations, therefore he has not shown that the Court needs to conduct an evidentiary hearing. Moreover, his allegations of breach fail to identify when, where, and by whom the promise was made and he has failed to identify the identity of an eyewitness to the promise. Accordingly, he has not shown that the Government breached its promise. Therefore, he cannot show that Counsel's failure to object to the alleged breach would have changed the outcome of the sentencing. Therefore, counsel's failure to object was not prejudicial and Petitioner's first claim of ineffective assistance of counsel fails.

Second, Petitioner argues that counsel was ineffective for failing to object to the failure to apply a three point level reduction under §2X1.1(b)(1) of the Sentencing Guidelines. Under section 2X1.1(b)(1) of the Sentencing Guidelines, states that the base offense level should be decreased by three points , unless the circumstances demonstrate that the defendant was about to complete all such acts but for apprehension or interruption by some event beyond the defendant's control. U.S.S.G. §2X1.1(b)(1); *United States v. Castro-Trevino*, 464 F.3d 536, 546 (5th Cir. 2006). The facts of this case, as memorialized in the PSR,[2] indicated that Morris was ineligible for the three-point reduction. First, Morris obtained a prepaid debit card. He put $410 on the card to facilitate his ATM scheme. He registered the debit card under a pseudonym and then went to the Mercado 6 shopping center. Once there, he walked up to the ATM, he typed in a code that allowed him to access the "Enter Password" screen. He then attempted to gain access to the administrator access to complete the ATM function. During his attempt, the FBI interrupted him and arrested him. Based on these facts, the Court determined that the Petitioner was not entitled to a three point level reduction under §2X1.1(b)(1), because but for the FBI's interruption and apprehension, Petitioner would have completed all the acts necessary to complete the crime rendering him ineligible for the three-point reduction. *Castro-Trevino*, 464 F.3d at 546. Because Petitioner was ineligible for the three-point reduction, Petitioner cannot show that there is a reasonable probability that but for counsel's failure to object to the Court's failure to apply the reduction the result of the sentencing would have been different. *See Strickland,* 466 U.S. at 694; *Cavitt*, 550 F.3d at 440. Therefore, counsel's failure to object was not prejudicial and Petitioner's second claim of ineffective assistance of counsel fails.

Third, Petitioner argues that counsel was ineffective for counsel was ineffective for failing to object to the district court's application of USSG §3B1.1(c) enhancement. Under section 3B1.1(c), the

---

[2] When making factual findings for sentencing purposes, a district court "may consider any information which bears sufficient indicia of reliability to support its probable accuracy." *United States v. Harris*, 702 F.3d 226, 230 (5th Cir. 2012) Generally, a PSR bears sufficient indicia of reliability to be considered as evidence by the sentencing judge in making factual determinations. *Harris,* 702 F. 3d at 230.

sentencing court should increase the defendant's offense level by two points if the defendant was an organizer, leader, manager, or supervisor in any criminal activity. The application notes to section 3B1.1 require that the defendant either (1) exercised control over another participant in the offense, or (2) exercised management responsibility over the property, assets, or activities of a criminal organization, wherein a criminal organization is comprised of one or more "participants." U.S.S.G. § 3B1.1, cmt. n.2; *United States v. Delgado*, 672 F.3d 320, 345 (5th Cir. 2012). The facts of this case indicate that the Petitioner was an organizer of the offensive conduct. Here, the PSR indicated that Petitioner "recruit[ed] Martin to assist him in locating the ATM machines in the Houston area."[3] (H-CR-10-512, Instrument No. 33, at 7). On April 4, 2011, the Petitioner furnished a signed statement for consideration of acceptance of responsibility. In that statement, Petitioner wrote:

> To the Honorable Judge Vanessa D. Gilmore:
>
> I am writing this letter to express my remorse for my actions on April 22, 2010 [sic] and to accept complete responsibility for the crime committed on that date. **It was my planning and execution alone that created the potential to defraud the owners of the ATM's in question and it was my intent to commit fraud upon my arrival to Houston on April 22, 2010.**
>
> I have come to understand the negative impact my crime has had on society, my loved ones, and the potential victims of the crime. Words alone cannot express the regret I have for potential monetary loss to the victims of my crime and the grief and shame I have brought to both my family and friends.

(H-CR-10-512, Instrument No. 35, at 1) (emphasis added). Based on these facts, the Court determined that the Petitioner was the organizer. Petitioner, however, contends that the Court's determination was incorrect because the only other people involved in the scheme were Martin, the confidential informant, and Leo, the undercover officer, and confidential informants and undercover agents do not count as

---

[3] When making factual findings for sentencing purposes, a district court "may consider any information which bears sufficient indicia of reliability to support its probable accuracy." *United States v. Harris*, 702 F.3d 226, 230 (5th Cir. 2012) Generally, a PSR bears sufficient indicia of reliability to be considered as evidence by the sentencing judge in making factual determinations. *Harris,* 702 F. 3d at 230. A district court is permitted to rely on facts in the PSR of the defendant's leadership role when, as here, the defendant offered no evidence at the sentencing hearing to rebut those facts. *United States v. Zuniga*, 720 F.3d 587, 2013 U.S. App. LEXIS 12700, at *9 (5th Cir. 2013). "Mere objections do not suffice as competent rebuttal evidence." *United States v. Solis*, 299 F.3d 420, 455 (5th Cir. 2002).

"participants" for the purposes of § 3B1.1 . While it is true that confidential informants and undercover agents may not qualify as a "participants," *See* § 3B1.1, cmt. n.1; *United States v. Williams*, 46 F. 3d 1129, 1995 U.S. App. LEXIS 2379, at *4-5 (4th Cir. Feb. 9, 1995); *see also United States v. Cooper,* 274 F. 3d 230, 247 (5th Cir. 2001) (in order to be eligible for the leader-organizer enhancement, the defendant must supervise at least one "other culpable participant.") that rule does not mandate a reversal of the sentencing court's decision. The introductory commentary to § 3B1.1 states that "the determination of a defendant's role in the offense is to be made on the basis of all conduct within the scope of § 1B1.2…and not solely on the basis of elements and acts cited in the count of conviction." § 3B1.1, intro. cmt. Martin did not become a confidential informant until March 2010, therefore the introductory commentary suggests that if Morris was a leader or organizer at any point before March 2010, then the application of the points was not improper.

More specifically, if there is evidence that Morris (1) exercised control over another participant in the offense, or (2) exercised management responsibility over the property, assets, or activities of a criminal organization, at some point before Martin became a confidential informant, then the sentencing enhancement was warranted. The facts here indicate that before Martin became a confidential informant: Morris approached Martin to hack into ATM machines; Morris approached Martine to identify and provide locations of Tranax Mini-Bank 1500, 1700, and 2000 ATM machines by placing a GPS tracking device on an ATM maintenance man's vehicle so that Martin could identify locations with that Tranax Mini-Bank brand of ATM. Moreover, Morris admitted that he was responsible for the planning and execution of the scheme to defraud. Accordingly, the evidence clearly established that, before Martin became a confidential informant, Morris exercised management responsibilities over the activities of a criminal organization comprised of him and Martin. As such, Morris was eligible for the two-point enhancement. Because the evidence clearly demonstrated that the Petitioner was the organizer of this criminal scheme, Petitioner cannot show that there is a reasonable probability that but for his counsel's failure to object to the enhancement that the result of the sentencing would have been different. *See*

*Strickland,* 466 U.S. at 694; *Cavitt*, 550 F.3d at 440. Therefore, counsel's failure to object was not prejudicial and Petitioner's third claim of ineffective assistance of counsel fails.

In sum, the Petitioner contends that his conviction and/or sentence should be vacated because his counsel was constitutionally ineffective. In furtherance of this contention, Petitioner has specified three ways in which counsel was ineffective. On review, the Court found that these three challenges were meritless and fit for summary dismissal. Accordingly, the Motion to Vacate is **DENIED (Instrument No. 1).**

## VI.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as codified in 28 U.S.C. § 2253, a prisoner who was denied habeas relief in the district court cannot appeal that denial "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A); *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003); *United States v. Hall*, 455 F.3d 508, 513 (5th Cir. 2006). Until a certificate of appealability issues, "federal courts of appeals lack jurisdiction to rule on the merits of appeals from habeas petitioners." *Miller-El*, 537 U.S. at 336; *Hall*, 455 F.3d at 513. The rules governing section 2255 petitions instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." R. Governing § 2255 Proc. U.S. Dist. Cts. 11.

The AEDPA, permits the issuance of a certificate of appealability only where a petitioner has made a "substantial showing of the denial of a constitutional right." §2253 (c)(2); *Miller-El,* 537 at 336; *Hall*, 455 F.3d at 513. In order to sustain that burden, the petitioner must show "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004). Under the controlling standard, this requires the defendant to show "that reasonable jurists could debate whether or, for that matter, agree that the § 2255 Motion should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (internal punctuation omitted); *United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002).

A district court may deny a certificate of appealability on its own, without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) ("it is perfectly lawful for district courts to deny certificates of appealability *sua sponte*."). After carefully considering the record, the court concludes that jurists of reason would conclude without debate that Morris has not stated a valid claim for relief under § 2255, nor do the issues raised in his Petition warrant encouragement to proceed further. Accordingly, the Court will not issue a certificate of appealability. As such, Petitioner's Motion for a Certificated of Appealability (**Instrument No. 8**) is **DENIED.**

## V.

For the foregoing reasons, Petitioner's Motion to Vacate (**Instrument No.1**) and Petitioner's Motion for a Certificate of Appealability (**Instrument No. 8)** are **DENIED.**

The Clerk shall enter this Order and provide a copy to all parties.

**SIGNED** on this the  28th day of August, 2013, at Houston, Texas.

_____
**VANESSA D. GILMORE**
**UNITED STATES DISTRICT JUDGE**